UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MATEUSZ K. WOLYNSKI, | ) |
| | ) |
| Plaintiff(s), | ) |
| | ) |
| vs. | ) Case No. 4:21-CV-1158 SRW |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant(s). | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on review of an adverse ruling by the Social Security Administration. The Court has jurisdiction over the subject matter of this action under 42 U.S.C. § 405(g). The parties consented to the exercise of authority by the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Plaintiff filed a Brief in support of the Complaint. ECF No. 10. Defendant filed a Brief in Support of the Answer. ECF No. 17. Plaintiff filed a Reply. ECF No. 18. The Court has reviewed the parties' briefs and the entire administrative record, including the transcripts and medical evidence. Based on the following, the Court will reverse the Commissioner's denial of Plaintiff's application and remand the case for further proceedings.

**I.      Factual and Procedural Background**

On April 1, 2019, Plaintiff Mateusz Wolynski protectively filed an application for disability insurance benefits ("DIB") under Title II, 42 U.S.C. §§ 401, *et seq.* Tr. 185-91. Plaintiff's application was denied on initial consideration. Tr. 70-85, 89-93. On September 6, 2019, he requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 94-95.

Plaintiff appeared for a telephonic hearing, with the assistance of counsel, on October 1, 2020. Tr. 31-69. Plaintiff testified concerning his disability, daily activities, functional limitations, and past work. *Id*. The ALJ also received testimony from vocational expert ("VE") Deborah Determan. *Id*. at 64-68. On December 9, 2020, the ALJ issued an unfavorable decision finding Plaintiff not disabled. Tr. 7-24. Plaintiff filed a request for review of the ALJ's decision with the Appeals Council. Tr. 25-26, 182-84. On July 29, 2021, the Appeals Council denied Plaintiff's request for review. Tr. 1-6. Accordingly, the ALJ's decision stands as the Commissioner's final decision.

With regard to Plaintiff's testimony, medical records, and work history, the Court accepts the facts as presented in the parties' respective pleadings. The Court will discuss specific facts relevant to the parties' arguments as needed in the discussion below.

**II.    Legal Standard**

A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" § 1382c(a)(3)(B).

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability. 20 C.F.R. § 416.920(a)(1). First, the Commissioner considers the

claimant's work activity. If the claimant is engaged in substantial gainful activity, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a severe impairment "which significantly limits claimant's physical or mental ability to do basic work activities." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *see also* 20 C.F.R. § 416.920(a)(4)(ii). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 416.920(c), 416.920a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(5)(i). An RFC is "defined as the most a claimant can still do despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011); *see also* 20 C.F.R. § 416.945(a)(1). While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016).

Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Ultimately, the claimant is responsible for *providing* evidence relating to his RFC, and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work which exists in significant numbers in the national economy shifts to the Commissioner. *See Brock v. Astrue*, 574 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work which exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. § 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. *Id*. At Step Five, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant. *Hensley*, 829 F.3d at 932.

If substantial evidence on the record as a whole supports the Commissioner's decision, the Court must affirm the decision. 42 U.S.C. §§ 405(g); 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. Under this test, the court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision." *Reece v. Colvin*, 834 F.3d 904, 908 (8th

4

Cir. 2016). The Court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." *Id*. The ALJ will not be "reverse[d] merely because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently." *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 370 (8th Cir. 2016).

### III. The ALJ's Decision

Applying the foregoing five-step analysis, the ALJ found Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2023. Tr. 12. Plaintiff has not engaged in substantial gainful activity since February 20, 2018, the alleged onset date. *Id*. Plaintiff has the severe impairments of "bipolar disorder, anxiety disorder, adjustment disorder with depression, and obstructive sleep apnea." Tr. 12-13. Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. Tr. 13-14.

The ALJ found Plaintiff has the following RFC:

> [Plaintiff] has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: the claimant must avoid concentrated exposure to dust, fumes, odors, gases, and poor ventilation. He is able to complete simple, routine, tasks with minimal changes in job duties and setting. He should avoid fast-paced production type work. He is able to interact occasionally with supervisors and co-workers. He should avoid contact with the general public.

Tr. 14-17. The ALJ found Plaintiff is unable to perform any past relevant work. Tr. 17. The ALJ further found Plaintiff was born on November 18, 1978 and was 39 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. Tr. 18. Plaintiff has at least a high school education. *Id.*

The ALJ determined the transferability of job skills is not material to the determination of disability because the Medical-Vocational Rules supports a finding that Plaintiff is "not disabled," whether or not Plaintiff has transferrable job skills. *Id.* Relying on the VE's testimony and considering Plaintiff's age, education, work experience, and RFC, the ALJ found there were jobs existing in significant numbers in the national economy which he could perform, including representative occupations such as dishwasher (*Dictionary of Occupational Titles* ("*DOT*") No. 318.687-010, with approximately 500,000 positions nationally), night cleaner (*DOT* No. 358.687-010, with approximately 2,000,000 positions nationally), and laundry worker (*DOT* No. 361.684-014, with approximately 200,000 positions nationally). *Id*. The ALJ concluded Plaintiff has not been under a disability, as defined in the Social Security Act, from February 20, 2018, through the date of her decision. Tr. 19

## IV.    Discussion

Plaintiff argues the ALJ's decision was not supported by substantial evidence because the ALJ relied on the opinion of non-examining psychological consultant, Stephen Scher, Ph.D., who opined greater limitations than those adopted in the RFC. Plaintiff cites to the portion of Dr. Scher's opinion indicating he would be unable to perform more than simple one and two step instructions and tasks. ECF No. 10 at 9. Although the RFC limited him to "simple, routine, tasks with minimal changes in job duties and setting," Tr. 14, Plaintiff argues the ALJ's failure to explicitly limit him to one and two step instructions and tasks was reversible error. ECF No. 10 at 9. Plaintiff also asserts that if the ALJ did limit him to simple one and two step instructions and tasks, the representative occupations identified by the ALJ would have been eliminated because they require the hypothetical individual to perform more complicated instructions and tasks.

6

Plaintiff additionally argues the ALJ did not appropriately evaluate the opinions of his treating physician, Dr. James Cho, and consultative examiner, Ms. Alison Burner, M.A. ECF No. 10 at 11-14. As to Dr. Cho, Plaintiff asserts the ALJ "failed to provide a meaningful assessment of the supportability and consistency of [his] opinion" and, instead, offered a "boilerplate dismissal." *Id.* at 12. As to Ms. Burner, Plaintiff asserts the ALJ dismissed her opinion on an unfair assumption that it was based on his subjective reports rather than medical evidence. Plaintiff contends Ms. Burner's opinion was consistent with his reported activities of daily living, and her assessment was formulated after she expressly indicated she reviewed the underlying record.

In response, the Commissioner argues the RFC assessment was supported by substantial evidence. The Commissioner cites to Dr. Cho's treatment notes showing consistent improvement and no more than moderate anxiety, the notes of Plaintiff's counselor, Silvia Portolan, LPC, who generally described Plaintiff as stable with an improving condition, and discrepancies between Plaintiff's Function Report and other statements Plaintiff made regarding his symptoms. ECF No. 17 at 5-6, 8-9, 11-12. The Commissioner asserts the ALJ had no obligation to adopt all of Dr. Scher's opined limitations into the RFC, and properly discounted the other opinions in the record. *Id.* at 14-18.

The Court notes that Plaintiff limits his arguments to the ALJ's evaluation of his mental impairments. Plaintiff does not contest the ALJ's RFC evaluation of his physical conditions, which includes the severe impairment of obstructive sleep apnea and the non-severe impairments of restless leg syndrome and history of alcohol abuse. Although the Court has reviewed the underlying record in its entirety, the Court will limit its discussion to the ALJ's RFC assessment of Plaintiff's mental impairments only.

In determining the severity of Plaintiff's mental impairments, the ALJ concluded he had moderate limitations in his abilities to understand, remember or apply information; interact with others; concentrate, persist or maintain pace; and adapt and manage himself. However, the ALJ cited to several physical examinations in the record which revealed normal memory, average intellectual function, and intact attention span and concentration. Tr. 13-14, 368 (noting average intellect), 709 (noting intact memory and concentration upon examination, and denial of concentration issues), 712 (same), 723 (same), 737 (same), 739-40 (same), 743 (same), 757 (same), 949 (same), 951 (same), 771 (noting average memory).

Although Plaintiff's Function Report described feelings of "extreme" anxiousness in "a big crowd of people," Tr. 15, 236, the ALJ cited to areas in the record where Plaintiff reported an ability to leave his home without assistance, shop, go to the gym, eat at restaurants, attend his children's school and sports events, take walks, and attend meetings. Tr. 13-14, 16, 45, 51-58, 235-36, 511, 856, 868, 879-80, 888. The ALJ noted Plaintiff was hospitalized for mental health issues on June 13, 2018, but found his suicidal ideation to have "quickly resolved" as he "was discharged the next day, in stable condition" with no further in-patient treatment. Tr. 14, 317-468. The ALJ also considered Plaintiff's statement to his counselor in early 2020 that he was "doing well." Tr. 14, 894.

Despite the ALJ's indication that Plaintiff had no further in-patient treatment for mental health, the record reveals that on December 6, 2018, Plaintiff reported to his counselor that he "think[s] about suicide all the time." Tr. 848. On March 2, 2019 he appeared to the emergency room, described himself to have continued suicidal ideations, and reported he "attempted to kill himself" by overdosing on Klonopin due to his depression. Tr. 409-11, 413. The attending doctor directed Plaintiff be seen by a behavioral intake counsel and required psychiatric admission. *Id.*

8

On October 7, 2019, Plaintiff admitted to continued suicidal thoughts, but he denied a future plan to do so. Tr. 855. Although Plaintiff described himself to be "doing well" in early 2020, he also told his counselor he felt his medication was not working, and he suffered from "huge memory gap[s]." Tr. 885.

The ALJ cited to Plaintiff's testimony of being unable to get out of bed or care for himself without the assistance of his wife or parents, an inability to focus or concentrate, and insomnia lasting three to four days without sleep. Tr. 15, 43-44, 51, 56, 59-61. However, the ALJ determined, that although his impairments could reasonably be expected to cause the alleged symptoms, his statements concerning the intensity, persistence and limiting effects were not entirely consistent with the medical evidence and other evidence in the record. Tr. 15.

The ALJ identified Plaintiff's mental impairments as anxiety, bipolar disorder, and mania with "episodes" consisting of "95% depression." Tr. 15, 708-09, 757. The ALJ noted Plaintiff's depression was worse when he abused alcohol, and that he experienced "significant improvement in his mood and energy levels since he quit drinking" in 2019. Tr. 15, 835 (June 26, 2018 counseling record identifying a diagnostic impression of "alcohol abuse with alcohol-induced mood disorder"); 876 (reporting 10 days of sobriety on December 3, 2019, with an "improved mood"), 878 (reporting 17 days of sobriety on December 10, 2019, with a general mood "above 5" on a "scale of 1-10").

The ALJ found Plaintiff's mood was better when he changed his eating habits. Tr. 888, 890. On February 21, March 6, and March 31, 2020, Plaintiff told his counselor he was sleeping well and denied suicidal ideations. Tr. 888, 890, 892. Plaintiff explained, "I'm not as bad as I was with my moods and I'm not passing out anymore now that I eat breakfast and 3 solid meals." Tr. 888. At the six-week sober mark, Plaintiff reported doing well, going for a bike ride,

9

starting a puzzle, and buying a model airplane to assemble. Tr. 894. The ALJ pointed to instances in the record where Plaintiff told his medical providers he was sleeping between six to eight hours per night, going to the gym, walking for exercise, shopping in stores, and taking his daughter out to eat in restaurants. Tr. 15, 717, 856, 880, 918, 949.

The ALJ found it significant that even before Plaintiff quit drinking alcohol his examination findings were largely unremarkable. Tr. 16. For example, on August 23, 2019, consultative psychological examiner Alison Burner, M.A., observed Plaintiff as polite, cooperative, neatly dressed, and exhibiting good hygiene and grooming, average abstract reasoning, numerical reasoning, mental control, social judgment, long and short term memory, normal eye contact, affect, speech, and psychomotor activity. Tr. 16, 769-73. The ALJ found Ms. Burner's observations to be consistent with the mental status examination results performed by his treating provider, Dr. Cho, who regularly noted intact memory and concentration. Tr. 16, 709, 712, 723, 737, 739, 743, 757. The ALJ also noted that, on May 26 and July 24, 2020, Dr. Cho recommended Plaintiff taper off of Thorazine,[1] and on August 31, 2020, his counselor noted she had not been working with Plaintiff for "many months." Tr. 16, 950, 952, 947.

The ALJ considered Plaintiff's insomnia as a symptom of his obstructive sleep apnea and not as a result of his mental impairments. Tr. 16. Treatment records from June 26, 2019, reflect he stopped using his continuous positive airway pressure (CPAP) machine because the mask did not fit well. Tr. 16, 708. Plaintiff discontinued use despite acknowledging it improved his sleep quality and reduced his daytime sleepiness. Tr. 16, 492. On July 24, 2020, Dr. Cho encouraged Plaintiff to speak to his sleep doctor about getting another CPAP. Tr. 16, 950.

---

[1] Thorazine, the brand name for Chlorpromazine, is used to treat symptoms of schizophrenia, psychotic disorders, and/or mania for bipolar disorder. *MedlinePlus*, available at https://medlineplus.gov/druginfo/meds/a682040.html (last visited May 13, 2022).

The ALJ determined it would be "reasonable to restrict [Plaintiff] to work that [did] not require him to interact with the general public, or more than occasionally with supervisors and co-workers," but no other restrictions would be warranted. Tr. 16. In formulating this opinion, the ALJ highlighted Plaintiff's ability to engage in some social interactions, such as dining out, going to the gym, shopping, attending his children's school and sports events, a history of getting along with his treatment providers, as well as the improvements he made subsequent to his sobriety. *Id.*

In reviewing the medical opinions within the record, the ALJ considered the August 23, 2019 Psychological Evaluation submitted by consulting psychologist Alison Burner, M.A. Tr. 17, 769-74. Ms. Burner performed a mental status examination, which revealed cooperative behavior, normal eye contact and affect, no psychomotor agitation, clear speech, normal social functioning, proper orientation, average immediate memory, adequate recent and past memory, average mental control, normal abstract thinking, average insight and judgment, and no evidence of perceptual disturbance. Tr. 771-73. Ms. Burner described Plaintiff's self-reports of depression and mania, and opined Plaintiff had marked impairments in interacting with others during manic and depressive episodes; marked impairments in adapting and managing himself; moderate impairments in understanding, remembering, or applying information, and no impairments in his ability to concentrate, persist, or maintain pace. Tr. 773.

The ALJ determined Ms. Burner's Psychological Evaluation to be unpersuasive because her "opinion appear[ed] to largely be based on the claimant's subjective reporting, as [her] examination findings were largely unremarkable." Tr. 17. As to her impression that Plaintiff had marked impairments in interacting with others, the ALJ found it to be contradictory to Plaintiff's own reports of being able to "function in public settings, such as stores, the gym, restaurants, and

11

soccer games," and was notably able to interact well with Ms. Burner during the examination. *Id.* As to Ms. Burner's opinion that Plaintiff had marked impairments in adapting and managing himself, the ALJ noted his symptoms improved since he stopped drinking, denied suicidal ideations, and reported doing well to his treatment providers. *Id.*

The ALJ then considered the August 28, 2019 RFC Assessment of non-examining State psychological consultant Stephen Scher, Ph.D. Tr. 17, 76-82. Dr. Scher reviewed the underlying record, and found Plaintiff's statements regarding his symptoms to be "partially consistent." Tr. 80. Dr. Scher opined that Plaintiff was not significantly limited in his ability to remember locations and work-like procedures; understand and remember very short and simple instructions; carry out very short and simple instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; work in coordination with or in proximity to others without being distracted by them; make simple work-related decisions; and complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without unreasonable number and length of rest periods; ask simple questions or request assistance; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. Tr. 81-82.

Dr. Scher did, however, find Plaintiff to be moderately limited in his ability to understand and remember very short and simple instructions and to carry out detailed instructions. Tr. 81. He indicated Plaintiff would be able to follow "at least simple one and two step instructions" and

sustain "at least simple one and two step tasks." *Id.* Dr. Scher also opined that Plaintiff was moderately limited in his ability to interact with the general public and in responding appropriately to changes in the work setting, but he could "relate adequately to others in settings which do not require frequent public contact or unusually close personal interaction" and would be able "to adapt in noncomplex, socially restricted work environments." Tr. 82.

Dr. Scher explicitly acknowledged his opinion was less restrictive than Ms. Burner's, and explained it was because her evaluation "appear[ed] to be largely based on [Plaintiff's] subjective complaints and [was] not fully consistent w[ith] other evidence in [the] file." Tr. 79. Dr. Scher believed Ms. Burner's opinion was "an overestimate of the severity of [Plaintiff's] restrictions/limitations." Tr. 83. The ALJ found Dr. Scher's opinion to be persuasive, explaining that it was "well-explained," "well-supported by the treatment records and examination findings," and "consistent with the record as a whole." Tr. 17.

Lastly, the ALJ evaluated the opinion of Plaintiff's treating psychiatrist, Dr. Cho, which included two Medical Source Statements ("MSS"), dated March 29, 2019 and April 21, 2020. Tr. 775-77, 939-41. Within both statements, Dr. Cho checked boxes to indicate numerous areas where Plaintiff would be moderately, markedly, or extremely limited in understanding, concentrating, persisting, socially interacting, and adapting. *Id.* Dr. Cho included a letter with the second MSS, which identified Plaintiff's "two significant problems" as insomnia and anxiety. Tr. 945. Dr. Cho noted the insomnia "should be better addressed by a sleep doctor," but "he's had problems with his insurance in getting treatment." *Id.* Dr. Cho then described Plaintiff's anxiety to be "treatment resistant" as he has "tried several medications to treat it either with no to very limited success." *Id.* Dr. Cho further wrote he "speculated that [Plaintiff's] anxiety may significantly improve if his sleep could be improved[.]"

13

The ALJ found Dr. Cho's opinions as to Plaintiff's extreme and marked limitations to be unpersuasive because they were not consistent with his examination findings within his treatment notes. Tr. 17. Additionally, the ALJ noted Dr. Cho failed to address Plaintiff's history of alcohol abuse or his later reported symptomatic improvement with sobriety in the April 21, 2020 MSS and letter. *Id.*

Plaintiff first argues the ALJ committed reversible error by finding the opinion of Dr. Scher persuasive but failing to incorporate all of the functional limitations listed in his assessment. Specifically, Plaintiff asserts that because the ALJ found Dr. Cho and Ms. Burner's opinions to be unpersuasive, the ALJ was required to include Dr. Scher's limitation that he be restricted to simple one and two step instructions and tasks. Plaintiff also makes the related argument that, as a result of this alleged error, the ALJ incorrectly determined he could perform the jobs of dishwasher, night cleaner, and laundry worker, which require "Level 2 Reasoning." In contrast, an individual who is limited to one or two step tasks and instructions can only perform jobs requiring "Level 1 Reasoning."[2]

A claimant's RFC is "the most a claimant can do despite [his] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)).

---

[2] Level 1 Reasoning is described as the ability to "[a]pply commonsense understanding to carry out simple one- or two-step instructions [and] [d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job." Level 2 Reasoning is described as the ability to "[a]pply commonsense understanding to carry out instructions furnished in written or oral form [and] [d]eal with problems involving a few concrete variables in or from standardized situations." Dictionary of Occupational Titles, Vol. II, App. C § III.

14

As Plaintiff's claim was filed in January 2018, the ALJ was required to evaluate the medical opinions pursuant to the new rules set forth at 20 C.F.R. §§ 404.1520c and 416.920c. Under these rules, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . , including those from [Plaintiff's] medical sources." §§ 404.1520c(a), 416.920c(a). The ALJ must evaluate the persuasiveness of medical opinions and prior administrative medical findings in light of the following factors: (1) supportability (the degree to which the medical source presents objective medical evidence and supporting explanations); (2) consistency (how consistent the opinion is with evidence from other medical and nonmedical sources); (3) relationship with the claimant (including the length, purpose, nature, and extent of the relationship, and the frequency of examinations) (4) specialization, and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies." §§ 404.1520c(a)-(c), 416.920c(a)-(c). The first two factors—supportability and consistency—"are the most important factors" to consider when determining the persuasiveness of a medical source's medical opinions, and the ALJ must explain how he or she considered the factors of supportability and consistency in the decision. §§ 404.1520c(b)(2), 416.920c(b)(2). The ALJ may, but is "not required to," explain how he or she considered the remaining factors. §§ 404.1520c(b)(2), 416.920c(b)(2).

In her decision, the ALJ did not summarize Dr. Scher's opinion, nor did the ALJ state that she found the limitation to one- and two-step tasks inconsistent with the record. The ALJ limited her discussion of Dr. Scher's opinion as follows:

> In making [the RFC] finding, the undersigned has found the opinion of State agency psychological consultant Stephen Scher, Ph.D., to be persuasive. Dr. Scher's opinion is well-explained, is well-supported by the treatment records and

15

      examination findings discussed above, and is consistent with the record as a whole.

Tr. 17.

      The Court agrees with the Commissioner that there is no requirement that an ALJ adopt all of the findings or language of the state agency medical consultant, "even if the opinion is given substantial weight." *See Owens v. Saul*, 2020 WL 2319880, at *4 (W.D. Mo. May 11, 2020). Nor do the ALJ's findings need to mirror a particular report, form, or opinion. *See Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011) (holding the ALJ is not required to rely entirely on a particular physician's opinion). *See also Moore v. Commissioner*, 2021 WL 2834395, at *2 (N.D. Miss. July 7, 2021) ("the fact that the ALJ found the opinion persuasive does not obligate the ALJ to incorporate every limitation suggested by the report, nor do the regulations require the ALJ to expressly address the persuasiveness of every opinion within every report.") (citing 20 C.F.R. § 404.1520c). An ALJ is entitled to choose those parts of a medical source's opinion that are supported by the record, and thus will be adopted, and those which will not be adopted. *See Pirtle v. Astrue*, 479 F.3d 931, 934 (8th Cir. 2007). "Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner." *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007).

      Notwithstanding the above, "the absence of any explanation of why the ALJ disregarded [the State agent's] limitation to one-to-two step tasks, when she accepted all of the other limitations in [the State agent's] opinion, requires remand." *Lutz v. Kijakazi*, 2022 WL 782300, at *5 (E.D. Mo. Mar. 15, 2022). "The Eighth Circuit has also recognized that in some cases, the ALJ's failure to address specific evidence renders this Court 'unable to determine whether any such rejection is based on substantial evidence.'" *Id.* (quoting *Jones v. Chater*, 65 F.3d 102, 104 (8th Cir. 1995)).

16

In *Berry v. Kijakazi*, 2021 WL 4459699, (E.D. Mo. Sept. 29, 2021), this Court recently addressed the same point of error as in the instant case. The Court held:

> Because the ALJ did not provide a reason for rejecting [the State agent's] opinion on the two-step command limitation – while including [the agent's] other opined limitations in the RFC – the Court would be required to determine in the first instance whether there was substantial evidence to support the ALJ's decision to reject that limitation. It is not within the Court's purview to speculate why the ALJ may have rejected certain evidence. While the ALJ may have considered and for valid reasons rejected the two-step command limitation of [the agent's] opinion, the Court is unable to determine whether any such rejection is based on substantial evidence, given the ALJ's complete failure to address it. When an ALJ's decision is unclear as to the medical basis for his assessment of the degree to which the claimant's impairments affect [his] RFC, the matter must be remanded for further proceedings.

*Id.* at *9 (followed by *Lutz* 2022 WL 782300, at *5).

Similarly, in *Batson v. Kijakazi*, 2022 WL 501405 (W.D. Mo. Feb. 18, 2022), the Court held:

> When an ALJ finds a medical opinion is persuasive, supported by objective evidence, and consistent with the record, any limitations in the medical opinion should be included in the ALJ's RFC. *See Gann v. Barnhart*, 864 F.3d 947, 952-53 (8th Cir. 2017) (finding the ALJ's RFC failed to include functional limitations set forth in two medical opinions the ALJ afforded "significant weight"). While the Court acknowledges the ALJ does not have to "mechanically list and reject every possible limitation," the ALJ cannot "disregard evidence or ignore potential limitations." *See McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011).
>
> . . .
>
> Because the ALJ found [examining consultant's] opinions to be persuasive , supported by objective evidence, and consistent with the record, the ALJ should have included all limitations set forth by [the consultant]. Alternatively, if the ALJ chose not to include any of [the consultant's] limitations, the ALJ should have explained why any excluded limitation was not adopted. Here, the ALJ failed to do either. Thus, the RFC is not supported by substantial evidence.

*Id.* at *4.

In the instant case, the ALJ found Dr. Scher's opinion "persuasive" because it was "well-explained," "well-supported," and consistent with the record as a whole." Tr. 17. However, the ALJ omitted from the RFC, and from the discussion entirely, Dr. Scher's limitations of one- or two-step tasks and instructions resulting from Plaintiff's deficiencies in understanding, memory, concentration, and persistence. *See* Tr. 81. The ALJ did not explain in her decision why she believed Plaintiff could perform more than one- or two-step tasks, nor was there any other opinion evidence in the record indicating that Plaintiff could perform such tasks. Thus, the Court will follow the same approach it previously has in *Lutz, Berry,* and *Batson* and remand for further proceedings.

Further, the ALJ's error does not appear harmless. "An error is harmless when the claimant fails to 'provide some indication that the ALJ would have decided differently if the error had not occurred.'" *Lucus v. Saul*, 960 F.3d 1066, 1069 (8th Cir. 2020) (quoting *Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012)). Plaintiff argues that a limitation to one- or two-step tasks and instructions would prevent him from performing the jobs of dishwasher, night cleaner, and laundry worker. In the event the ALJ incorrectly excluded the one- or two step limitations, the ALJ would be required to present an amended hypothetical to a vocational expert in order to identify what jobs, if any, Plaintiff could perform in the national economy.

Thus, the Court must reverse the Commissioner's decision and remand this matter. Upon remand, the ALJ must consider all functional limitations set forth in Dr. Scher's opinions, and either include those limitations in the RFC or explain why limitations were not included in the RFC. Because remand is required, the Court will decline to address Plaintiff's remaining arguments. *See, e.g.*, *Berry*, 2021 WL 4459699, at *9 ("Because remand is required, the Court does not address all of Plaintiff's arguments.").

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner of Social Security is **REVERSED** and that this case is **REMANDED** under 42 U.S.C. 1383(c)(3) and Sentence Four of 42 U.S.C. § 405(g) for reconsideration and further proceedings consistent with this opinion.

So Ordered this 13th day of May, 2022.

_____
STEPHEN R. WELBY
UNITED STATES MAGISTRATE JUDGE